**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES HOWARD STINSON,** | : | **Civil Action No. 4:07-cv-01237** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **DAVID J. WAKEFIELD, et al.,** | : | |
| **Respondents** | : | |

**MEMORANDUM**

Petitioner Charles Howard Stinson ("Stinson"), an inmate presently confined at the

Huntingdon State Correctional Institution ("SCI Huntingdon") in Huntingdon, Pennsylvania,

initiated the above action pro se by filing a petition for writ of habeas corpus ("petition")

pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  The petition is fully briefed and ripe for

disposition.  For the reasons set forth herein, the petition will be denied.

**I.  BACKGROUND**

**A.  State Court Proceedings**

The relevant background of the circumstances surrounding Stinson's arrest, conviction,

and sentencing, was summarized by the Pennsylvania Superior Court in its February 19, 1999

opinion disposing of his direct appeal nunc pro tunc from his judgment of sentence as follows:

> The charges in this case arose out of a series of break-ins taking place
> at Tall Trees Apartments in the early morning hours of August 18,
> 1989.  Sometime after midnight, Ralph Deleo heard noises coming
> from his bedroom at 1802 Tall Trees Apartments. N.T., 3/12-14/90,
> at 32, 33.  When he entered the bedroom, Mr. Deleo saw the curtains
> moving in front of the window. Id. at 33.  Suspecting someone was
> outside the window, he shouted a warning.  Id.  After hearing no
> other noises, he approached the window and saw that it had been
> broken and the screen was missing.  Id.  He telephoned the Dunmore
> police who arrived approximately fifteen minutes later.  Id.  at 36.
> The next day, Mr. Deleo discovered that a plant from the windowsill
> was missing.  Id. at 39.

Dunmore Police Lieutenant William Gowden testified that he investigated several break-ins at Tall Trees Apartments. On the scene, Lieutenant Gowden observed the damage to Mr. Deleo's apartment, as well as damage to other apartments. Id. at 111. At 1701 Tall Trees, Lieutenant Gowden found a screen partially pried off the apartment's window. Id. at 111-12. At 1303 Tall Trees, Lieutenant Gowden found pry marks on a sliding glass door. Id. at 112. When he arrived at 1102, Lieutenant Gowden noticed that the window screen had been pried, but was not removed from the casing. Id.

At 1003 Tall Trees, the apartment of Elizabeth Barrett, Lieutenant Gowden observed that a screen had been pulled out and seriously damaged. Id. at 113. Once again, Lieutenant Gowden noticed pry marks on the screen. Id. Lieutenant Gowden also observed similar damage to screens and windows at apartment numbers 303, 203, 202 and 102. Id.

Elizabeth Barrett, a resident of Tall Trees, testified that in the early morning hours of August 18, 1989, she heard a noise that sounded similar to the wind blowing the window shade. Id. at 159. Elizabeth's mother, who uses a wheel chair, called out to her. At that time, Elizabeth told her mother that somebody was at the window. Id. When her mother started to get up, the women heard the sound of a tearing screen. Id. When they reached the window, the screen appeared 'pried up' but they could see no intruder. Id.

Elizabeth telephoned the residence of her brother Joseph Barrett, who lived in the next apartment. Id. Because Mr. Barrett was not available for trial, the Commonwealth presented his preliminary hearing testimony. According to Mr. Barrett's preliminary hearing testimony, his son received the telephone call. Mr. Barrett stated:

> So I got up and I heard my wife say to my son, 'Where are you going?' And he said, 'somebody is trying to break into grandmom's [sic] apartment." Well, I threw on my pants and my shoes, I ran in - into – I'm sorry. I ran into the living room, put on my shoes and my son was going to the front door and he stopped. And I can see there was somebody coming out of the woods in front of him, and I started saying, 'Get up there fast.'

2

>So this guy is coming out of the woods towards my son, and I thought they were going to confront one another, and they got to the door, and the guy turned and started walking parallel with the tree line.

Id. at 153-54.

Mr. Barrett testified that he 'got a glimpse' of the person emerging from the woods.  Id. at 154.  When asked if he saw the person present at the preliminary hearing, Mr. Barrett responded "I see a guy that looks like him only he had longer hair, the guy I had seen . . . . I'd say he resembles him real good except for the fact that his hair was a lot longer.  I only looked real quick and then he turned and walked sideways."  Id. at 154, 157.  Although he thought the person looked suspicious, Mr. Barrett stated that the person was not near the apartment of his mother and Elizabeth Barrett.  Id. at 155.  Finally, Mr. Barrett acknowledged that he could not state with 100 percent accuracy that [Stinson] was the man he saw on August 18, 1989.  Id. at 157.

Another resident of Tall Trees, Edwin Blackburn, Ph.D., testified that he heard an intruder in the early morning hours of August 18, 1989.  Id. at 198-99.  Dr. Blackburn awoke when he heard his wife scream at which time he saw a man silhouetted in the bedroom.  Id.  Dr. Blackburn jumped out of bed, told the intruder to leave, and wrestled with the man.  Id.  When the two reached the living room, Dr. Blackburn maneuvered the intruder to the sliding glass door, then threw the man out of the door.  Id.  After the intruder left, Dr. Blackburn discovered that he had been stabbed.  Id. at 200.  As a result of the stabbing, Dr. Blackburn suffered injuries to his heart and left lung.  Id. at 207.  He continues to have difficulty breathing.  Id.

At the hospital, Dr. Blackburn described the intruder as an Hispanic looking male approximately five feet, ten inches tall.  Id. at 202.  In court, Mr. Blackburn identified [Stinson] as the intruder, but stated that since the incident, [Stinson] had cut his hair, cleaned, and shaved his face.  Id. at 203.  Dr. Blackburn had previously identified [Stinson] from a photo array presented by police.  Id.  To the best of his recollection, Dr. Blackburn viewed the photo array while he was in the intensive care unit at the hospital.  Id. at 216.

During cross-examination, Dr. Blackburn admitted that he wears glasses, but did not have them on at the time of the incident.  Id. at 211. Dr. Blackburn knew that the assailant's hair was longer than his

3

own, but did not recall the hair being down to the assailant's shoulders.  Id. at 214.  Finally, Dr. Blackburn testified that he could not recall the specific hair color of the assailant.  Id. at 213.

On March 14, 1990, Stinson was convicted by a jury sitting in the Court of Common Pleas of Lackawanna County, Pennsylvania, of aggravated assault, simple assault, recklessly endangering another person, three counts of burglary, eleven counts of criminal trespass, nine counts of criminal attempt to commit burglary, and loitering and prowling at night.  (Doc. No. 39 at 4-5[1].)  He subsequently was sentenced to an aggregate term of imprisonment of not less than ten nor more than twenty years.  (Id. at 10.)

As recounted by the Pennsylvania Superior Court in disposing of Stinson's appeal nunc pro tunc from his judgment of sentence, his counsel filed a direct appeal on his behalf that ultimately was dismissed as a result of the failure to file a brief.  (Id. at 36-37.)  Stinson's newly appointed counsel then filed a petition to reinstate Stinson's direct appeal rights, which the Pennsylvania Superior Court granted, but the appeal again was dismissed for the failure to file a brief.  (Id. at 37.)  However, the dismissal was without prejudice to Stinson's ability to pursue a claim under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. §§ 9541-9546, and he subsequently filed a PCRA petition seeking the reinstatement of his direct appeal rights.  (Id.; Doc. No. 39 at 9-14.)  By order dated January 2, 1997, the trial court granted his petition.  (Id. at 33.)

Stinson then filed a direct appeal nunc pro tunc from his judgment of sentence to the Pennsylvania Superior Court.  (Id. at 34.)  He raised the following issues for review:

---

[1] For the sake of uniformity, citations to page numbers throughout this memorandum refer to the page numbers generated by the CM/ECF System.

[1.]  Did the Trial Court err when it allowed hearsay testimony to be presented as to identification of the Defendant by Joseph Barrett and, thereafter, allowed the preliminary hearing testimony of Joseph Barrett to be presented to the jury as an unavailable witness under 42 Pa. C.S.A. § 5917 and, in the alternative, did Trial Counsel render ineffective assistance in failing to object to same.

[2.]  Did the Trial Court err when it allowed the Commonwealth to introduce a fingerprint exhibit and a photo array into evidence or, in the alternative, did Trial Counsel render ineffective assistance sufficient to warrant a new trial?

[3.] Whether the evidence presented at the time of trial was sufficient to support the jury's verdict in the present manner?

[4.] Did Trial Counsel render ineffective assistance in failing to object and request a curative instruction as to improper and prejudicial comments rendered by Counsel for the Commonwealth during opening and closing statements.

[5.] Did Trial Counsel render ineffective assistance of counsel in failing to move to suppress the photographic identification and subsequent in-court identification of the Defendant by Dr. Blackburn and Mr. Barrett in that same was unreliable and tainted.

(Id. at 41.)  By memorandum and order dated February 19, 1999, the Pennsylvania Superior Court affirmed the judgment of sentence; however, the Superior Court concluded that the record was insufficient to dispose of all but one of Stinson's ineffective assistance claims[2], and thus it remanded the case to the trial court for an evidentiary hearing on those claims.  (Id. at 55.)  The Court instructed that, if, on remand, the trial court found ineffectiveness, Stinson's sentence should be vacated and a new trial granted.  (Id.)

Stinson filed a Petition for Allowance of Appeal from the Superior Court's February 19,

---

[2] The Superior Court found the evidentiary record to be insufficient to dispose of the ineffective assistance claims raised in issues 1, 2, and 5 set forth above, but found the record sufficient to dispose of the ineffective assistance claim raised in issue 4 and disposed of it in its February 19, 1999 memorandum.  (See Doc. No. 39 at 42-56.)

1999 decision, which was denied by the Pennsylvania Supreme Court on November 14, 2000. (Id. at 57.)

On October 18, 2006, the trial court conducted an evidentiary hearing on Stinson's ineffective assistance counsel claims in accordance with the Superior Court's decision remanding the case in 1999.  (Doc. No. 53-2 at 45-100, Doc. No. 53-3.)  Following  that hearing, by memorandum and order dated January 22, 2007, the trial court denied Stinson's ineffective assistance claims.  (Doc. No. 39 at 58-65.)  In its memorandum, the trial court identified the issues presented by Stinson as follows:

> 1.  Whether trial counsel was ineffective in supposedly failing to object to the testimony of Dunmore Police Lieutenant William Gowden concerning the photo array identification of Joseph Barrett?
>
> 2.  Whether trial counsel was ineffective for allegedly failing to review the District Attorney's file to discover a second photo array, because it contained a photo of the Defendant's alibi witness, John Hellman?
>
> 3.  Whether trial counsel was ineffective for supposedly failing to review the District Attorney's file to discover or obtain fingerprint evidence used at the time of trial?
>
> 4.  Whether trial counsel was ineffective in not seeking suppression of the in-court identification of the Defendant by Edwin Blackburn and Joseph Barrett on grounds that the photo array used by the police was unduly suggestive?

(Id. at 59.)[3]

Stinson appealed from the denial of relief as to the above ineffective assistance claims, and on November 28, 2007, the Pennsylvania Superior Court affirmed the trial court's decision.

---

[3] In listing the issues Stinson presented, the trial court set forth two separate ineffective assistance claims relating to the photo array and the fingerprint evidence that had been presented as one issue in his direct appeal nunc pro tunc.

(<u>Id.</u> at 67-80.)  In disposing of  his appeal, the Pennsylvania Superior Court clarified that,

procedurally, the appeal before it was from Stinson's judgment of sentence because he was

appealing the disposition of his ineffective assistance claims by the trial court on the remand that

arose from his appeal from his judgment of sentence.  (<u>Id.</u> at 67 n.1.)  On August 25, 2008, the

Pennsylvania Supreme Court denied Stinson's Petition for Allowance of Appeal.  (<u>See</u> Doc. No.

23.)

       **B.**      **Stinson's Petition for Writ of Habeas Corpus**

On July 9, 2007, while his appeal to the Pennsylvania Superior Court from the trial

court's January 22, 2007 order denying his ineffective assistance claims was pending, Stinson

filed the instant petition (Doc. No. 1) and a memorandum of law entitled "Memorandum I" (Doc.

No. 5).  Stinson simultaneously filed a motion requesting that this Court stay proceedings in this

matter pending his exhaustion of four habeas corpus claims that he stated then were on review by

the Pennsylvania Superior Court.  (Doc. No. 4 ¶ A.)

On September 5, 2007, in accordance with <u>United States v. Miller</u>, 197 F.3d 644 (3d Cir.

1999), and <u>Mason v. Myers</u>, 208 F.3d 414 (3d Cir. 2000), this Court issued a formal notice to

Stinson that he either could have his petition ruled on as filed, or withdraw his petition and file

one all-inclusive § 2254 petition within the one-year statutory period prescribed by the

Antiterrorism and Effective Death Penalty Act ("AEDPA").  (Doc. No. 10.)  Stinson was

directed to file his notice of election indicating his choice within forty-five days, and was warned

that his failure to comply with the order would result in the Court ruling on his petition as filed.

(<u>Id.</u> )

In the ensuing time period, on September 11, 2007, Stinson filed two additional

memoranda of law entitled "Memorandum II" and "Memorandum III."  (Doc. No. 11.)

Stinson did not file his notice of election within the forty-five day time period. Accordingly, by order dated November 19, 2007, Stinson was directed to file a status report advising the Court as to whether he still was seeking a stay of the proceedings in this matter. (Doc. No. 13.)

In a status report filed on January 2, 2008, Stinson notified the Court that the Pennsylvania Superior Court had denied his appeal on November 28, 2007 and that he was doubtful that a petition for allowance of appeal to the Pennsylvania Supreme Court would be filed by his court appointed counsel.  (Doc. No. 16.)  On January 7, 2008, Stinson filed an additional status report indicating that his legal counsel had in fact timely filed a petition for allowance of appeal with the Pennsylvania Supreme Court on December 28, 2007.  (Doc. No. 17.)

Accordingly, by memorandum and order dated January 23, 2008, this Court stated that, because Stinson had not responded to the Court's September 5, 2007 order within the forty-five day period, the Court would rule upon the petition as filed.  (Doc. No. 19 at 1-2.)  The Court also granted Stinson's motion to stay these proceedings, directed the Clerk of Court to administratively close this case, and directed Stinson to file written status reports with the Court at sixty day intervals until the conclusion of his state court exhaustion efforts.  (Id. at 6.)

Stinson complied with the January 23, 2008 order by providing status reports on March 17, May 12, and July 9, 2008.  (Doc. Nos. 20-22.)  In those reports, he indicated that the Pennsylvania Supreme Court had not yet disposed of his petition for allowance of appeal.  (Id.) In a report submitted on August 20, 2008, Stinson informed the Court that, on August 5, 2008,

8

the Pennsylvania Supreme Court denied his petition for allowance of appeal.  (Doc. No. 23.)  In

his final status report, submitted on August 22, 2008, he confirmed his receipt of the

Pennsylvania Supreme Court order, and he attached the order to his report.  (Doc. No. 24 at 6.)

In this status report, Stinson also stated that he had other claims which he could raise in state

courts through a PCRA petition, but opined that such efforts would be futile, and therefore

moved for this Court to lift the stay of the instant proceedings.  (Id. at 2.)

On September 15, 2008, Stinson submitted a memorandum of law entitled

"Memorandum IV" in which he addresses the timeliness of his petition and argues that all of his

habeas claims, including the four ineffective assistance of counsel claims that were under review

in state court during the time that this action was stayed, are exhausted.  (Doc. No. 25.)  He also

filed two supporting appendices (Doc. Nos. 26-27) along with a document purporting to make

corrections to Memoranda II and IV (Doc. No. 28).

On November 10, 2008, Stinson filed a motion for partial summary judgment.  (Doc. No.

29.)  He also filed a supporting brief.  (Doc. No. 30.)  Stinson sought partial summary judgment

as to his claim set forth in Ground 1 of his petition that "[t]he inordinate delay of over 7 years in

remand proceedings has caused irreparable prejudice to the Petitioner's rights of substantive due

process, procedural due process, equal protection of the laws, and a speedy direct appeal under

the provisions of the United States Constitution, Amendments V, VI, XIV, § 1."  (See Doc. No.

1 at 8, 11, 13.)

By order dated May 12, 2009, the Court granted Stinson's motion to lift the stay of these

proceedings, directed service of the petition, and also directed Respondents to file their

opposition to the motion for partial summary judgment that had been filed by Stinson on

9

November 10, 2008.  (Doc. No. 32.)

After obtaining an extension of time to file an answer to the petition, Respondents filed a motion to dismiss the petition (Doc. No. 37) and a motion to defer the filing of an answer until after disposition of the motion to dismiss (Doc. No. 36).  On June 19, 2009, Respondents filed an appendix (Doc. No. 39) and supplemental appendix (Doc. No. 40) in support of their filings.  By order dated June 30, 2009, the Court construed the motion to dismiss the petition as a proposed partial answer, and the supporting brief (Doc. No. 38) as a brief in support of the proposed partial answer.  (Doc. No. 42.)  The Court then granted the motion for leave to file a partial answer, and accepted the proposed partial answer.  (Id.)  The Court also ordered that Respondents would not be required to file their opposition to Stinson's motion for partial summary judgment until further order of court.  (Id.)  In response to correspondence filed by Stinson on July 1, 2009, by order dated July 2, 2009 (Doc. No. 45), the Court afforded him the opportunity to file a reply to the partial answer within fifteen days, and he subsequently filed a reply (Doc. No. 46), and supplement (Doc. No. 47).

By memorandum and order dated September 11, 2009, the Court concluded that Stinson's petition is timely, and therefore directed Respondents to file an answer to the petition, as well as a brief responsive to Stinson's motion for partial summary judgment, on or before October 13, 2009.  (Doc. No. 48.)  On October 9, 2009, Respondents filed a brief in opposition to the motion for partial summary judgment.  (Doc. No. 51.)  On October 13, 2009, Respondents filed a response to the petition (Doc. No. 52).  Respondents subsequently filed a second supplemental appendix (Doc. No. 53), and a memorandum of law in support of the response (Doc. No. 54).

On October 26, 2009, Stinson filed a reply brief as to his motion for partial summary judgment[4] (Doc. No. 56), and also filed a motion requesting an extension of time to file his reply to the answer to the petition (Doc. No. 55).  By order dated October 29, 2009, Stinson's motion was granted, Respondents were directed within seven days to file proof of service on Petitioner as to their most recent filings in accordance with Middle District of Pennsylvania Local Rule ("LR") 4.2, and Stinson was directed to file his reply within twenty days from the date of Respondents' filing of proof of service.  (Doc. No. 57.)  After the filing of a certificate of proof of service on November 5, 2009 (Doc. No. 58), Stinson filed his reply (Doc. No. 59) and accompanying exhibits (Doc. No. 59-2) on December 2, 2009.  Accordingly, the petition is fully briefed and ripe for disposition.

## II.   CLAIMS PRESENTED IN FEDERAL PETITION

Stinson utilized a rather unconventional manner of presenting his grounds for relief, and thus it is necessary to begin by clarifying where in the record his grounds are located before setting forth the specific grounds.

Stinson presents a total of nine grounds for relief in the context of this habeas corpus action.  However, at the time he filed his petition, he had not yet exhausted his four ineffective assistance of counsel claims that then were being reviewed in state court.  Therefore, his petition only sets forth the five grounds that were exhausted at the time of filing the petition.  Stinson stated his remaining four grounds for habeas relief in a submission entitled Memorandum IV, which he filed on September 15, 2008, after those issues had been exhausted in state court.  (See

---

[4] By memorandum and order dated April 9, 2010, the motion for partial summary judgment was denied.  (Doc. No. 60.)  Stinson's motion for reconsideration from that decision is disposed of by separate memorandum and order.

Doc. No. 25.)

In setting forth Grounds 1 through 5 in his form petition, Stinson chose not to utilize the space provided on the form for setting forth grounds and supporting facts.  Instead, he inserted references in that space to typewritten material on the backs of the form's pages containing his statement of grounds.  Stinson also identifies his first five grounds in his submission entitled Memorandum I, which was filed with the petition on July 9, 2007.  (See Doc. No. 5.)  Therefore, in setting forth Stinson's grounds below, the Court first will provide a citation to the electronic page number of the petition containing the reference to the ground, followed by a citation to the electronic page number of the petition containing the actual statement of the ground, and finally to the electronic page number of Memorandum I where the statement of the ground is located.

In setting forth Grounds 6 through 9 below, the Court will provide citations to the electronic page numbers of Memorandum IV where Stinson states those grounds.

Having provided the foregoing clarification, the Court now sets forth Stinson's nine grounds upon which he seeks federal habeas relief:

(1)     The inordinate delay of over 7 years in remand proceedings has caused irreparable prejudice to the Petitioner's rights of substantive due process, procedural due process, equal protection of the laws, and a speedy direct appeal under the provisions of the United States Constitution, Amendments V, VI, XIV, § 1 (Doc. No. 1, Pet., at 8; Doc. No. 1 at 11, 13; Doc. No. 5 at 4 § B ¶ 1);

(2)      Did the Trial Court err when it allowed the preliminary hearing testimony of Joseph Barrett to be presented to the jury as an unavailable witness under 42 Pa. C.S.A. §5917? (Doc. No. 1 at 10; Doc. No. 1 at 3; Doc. No. 5 at 5 ¶ 3 (1));

(3)      Did the Trial Court err when it allowed the Commonwealth to introduce a fingerprint exhibit and a photo array into evidence?  (Doc. No. 1 at 14; Doc. No. 1 at 5; Doc. No. 5 at 5 ¶ 3 (2));

(4)     Whether the evidence presented at the time of trial was sufficient to support the jury's verdict in the present manner?  (Doc. No. 1 at 15; Doc. No. 1 at 5; Doc. No. 5 at 5 ¶ 3 (3));

(5)     Did Trial Counsel render ineffective assistance in failing to object and request curative instruction as to improper and prejudicial comments rendered by Counsel for the Commonwealth during opening and closing statements?  (Doc. No. 5 at 5 ¶ 3 (4));

(6)     Whether Trial Counsel was ineffective in failing to object to the hearsay testimony of Lieutenant Gowden concerning the photo array identification of Joseph Barrett?  (Doc. No. 25, Mem. IV, at 5 ¶ 1);

(7)     Whether Trial Counsel was ineffective in failing to review the file of the District Attorney to discover the second photo array especially when the Commonwealth's exhibit No. 9 contained a photograph of Defendant's alibi witness, John Hellman?  (Id. ¶ 2);

(8)     Whether Trial Counsel was ineffective in failing to review the file of the District Attorney to discover or obtain copies of the fingerprint evidence utilized at the time of trial against the Defendant?  (Id. ¶ 3[5]);

(9)     Whether Trial Counsel was ineffective for failing to seek suppression of the in court identification of the Defendant by Edwin Blackburn and Joseph Barrett on grounds that the photo array used by police was unduly suggestive?  (Id. ¶ 4).

## III.    STANDARD OF REVIEW

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that

---

[5] An error in pagination of the paragraphs occurred in Stinson's Memorandum IV whereby he included two paragraphs labeled "2"; the Court therefore refers to the second of those paragraphs as paragraph 3 here.

[petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 67-68; <u>see also</u> <u>Pulley v. Harris</u>, 465 U.S. 37, 41

(1984); <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 114 (3d Cir. 1997).

### A.       Exhaustion

As a general rule, a state prisoner must exhaust available state court remedies

before seeking habeas relief in federal court.  28 U.S.C. §§ 2254(b)-(c); <u>see also</u> <u>Cone v. Bell</u>,

129 S. Ct. 1769, 1780 (2009); <u>Rose v. Lundy</u>, 455 U.S. 509, 515-20 (1982); <u>Toulson v. Beyer</u>,

987 F.2d 984, 986 (3d Cir. 1993); <u>Gibson v. Scheidemantel</u>, 805 F.2d 135, 138 (3d Cir. 1986).

"Unless it would be patently futile to do so, . . . [state prisoners] must seek relief in state court

before filing a federal habeas petition . . . ."  <u>Santana v. Fenton</u>, 685 F.2d 71, 77 (3d Cir. 1982).[6]

The exhaustion requirement "is not a mere formality.  It serves the interests of comity between

the federal and state systems by allowing the state an initial opportunity to determine and correct

any violations of a prisoner's federal rights."  <u>Gibson</u>, 805 F.2d at 138.

To satisfy the exhaustion requirement, a federal habeas petitioner must have presented

the facts and legal theory associated with each claim through "one complete round of the State's

established appellate review process."[7] <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see</u>

---

[6] Exceptions to the exhaustion requirement are made when: (1) the state corrective process is so deficient as to render any effort to obtain relief futile, 28 U.S.C. § 2254(b); (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner, <u>Mayberry v. Petsock</u>, 821 F.2d 179, 184 (3d Cir. 1987); or (3) "inordinate delay" in state proceedings has rendered state remedies ineffective.  <u>Story v. Kindt</u>, 26 F.3d 402, 405 (3d Cir. 1994); <u>Schandelmeier v. Cunningham</u>, 819 F.2d 52, 55 (3d Cir. 1986).

[7] Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under Section 2254.  <u>See</u> <u>In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases</u>, No. 218, Judicial Administration Docket No. 1 (May 5, 2000)

also Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004).  The exhaustion requirement is satisfied if a petitioner's claims are either presented to the state courts directly on appeal from the judgment of sentence, or through a collateral proceeding, such as a PCRA petition.  Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984).  It is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts *both* on direct appeal *and* in a PCRA proceeding.  Id.  However, a petitioner is not deemed to have exhausted the remedies available to him if he has a right under the state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c); Castille v. Peoples, 489 U.S. 346, 350 (1989).  The petitioner bears the burden of demonstrating that he has satisfied the exhaustion requirement. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000).

The above rule requires a federal court to dismiss without prejudice habeas petitions that contain any unexhausted claims.  Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004).  For claims that were not fairly presented to the state court, but for which "further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility."  Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001).  Although futile claims are deemed exhausted for federal habeas purposes, such claims are also procedurally defaulted; federal courts are not permitted to evaluate the merits of procedurally defaulted claims unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse [the] default."  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); see also Coleman v. Thompson, 501 U.S. 722, 750-51 (1991).  To demonstrate "cause" for a procedural default, the

---

(per curiam).  As such, petitioners are not required to seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a "full opportunity to resolve any constitutional claims."  Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

petitioner must show that "'some objective factor external to the defense . . . impeded [his or her] . . . efforts to comply with the . . . [state] procedural rule.'"  Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007) (quoting Slutzker, 393 F.3d at 381); Murray v. Carrier, 477 U.S. 478, 488 (1986).  The petitioner may demonstrate prejudice by establishing the existence of errors that "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Murray, 477 U.S. at 494.  Finally, a federal court may excuse procedural default when its failure to review the claim will result in a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 F.3d at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998).

Stinson raised the issues contained in Grounds 2 through 5 in his direct appeal nunc pro tunc from his judgment of sentence to the Pennsylvania Superior Court.  (See Doc. No. 39 at 41.) The issues contained in Stinson's Grounds 6 through 9 were the subject of the evidentiary hearing held by the trial court on October 18, 2006 pursuant to the Superior Court's directive on remand (see Doc. No. 39 at 59), and he sought review of the trial court's disposition of these issues on appeal to the Pennsylvania Superior Court (see Doc. No. 39.)  Accordingly, all of these issues have been presented through "one complete round of the State's established appellate review process" and are therefore exhausted.  See O'Sullivan, 526 U.S. at 845; Holloway, 355 F.3d at 714; see also Pennsylvania Supreme Court Order No. 218.

The analysis as to whether Stinson has exhausted his claim in Ground 1 that "[t]he

inordinate delay of over 7 years in remand proceedings has caused irreparable prejudice to the Petitioner's rights of substantive due process, procedural due process, equal protection of the laws, and a speedy direct appeal under the provisions of the United States Constitution, Amendments V, VI, XIV, § 1" is not so easily resolved.  Respondents have argued that Stinson has not exhausted his state remedies with respect to this claim because he has not raised the claim in a PCRA petition, and therefore has not "fairly presented" the claim to the state courts so as to exhaust it.  (See Doc. No. 54 at 9-12.)  Stinson asserts that he exhausted this claim through his filing of a state petition for writ of habeas corpus with the Pennsylvania Supreme Court on June 29, 2006.  (See Doc. No. 56 at 5-6; Doc. No. 26 at 44-87, Doc. No. 26-2 at 1-52.)

The Court begins by observing that, to the extent that Stinson attributes fault for the delay in the scheduling of his remand hearing to his appellate counsel, he would have been required to raise this claim as an ineffective assistance of counsel claim in a PCRA petition in order to exhaust it.  See 42 Pa. Cons. Stat. Ann. § 9543(a)(2)(ii).  Because he chose not to file a PCRA petition raising such a claim, and state procedural rules prevent him from raising this claim in state court, he has procedurally defaulted this claim.[8]  Stinson has not claimed that cause or prejudice would result from the default.  He also has not demonstrated his actual innocence such that a lack of review by the Court would constitute a fundamental miscarriage of justice.  See McCandless, 172 F.3d at 260.  Therefore, he is precluded from obtaining review of this aspect of his claim within the context of the instant federal habeas petition.

---

[8] A PCRA petition must be filed within one (1) year of the date the judgment of sentence becomes final.  42 Pa. Cons. Stat. Ann. § 9545(b)(1).  To the extent he is raising a claim of ineffective assistance of counsel within Ground 1 of the instant petition, Stinson has not averred that this claim falls within any of the exceptions to the limitations period for filing a petition under the PCRA set forth in 42 Pa. Cons. Stat. Ann. § 9545(b)(1).

17

However, the Court finds that Stinson's claim that his constitutional rights were violated as a result of the seven year delay that occurred during his direct appeal proceedings from February 19, 1999, the date that the Superior Court remanded his case for an evidentiary hearing, and October 18, 2006, the date that the hearing occurred, was exhausted through his filing of a state petition for writ of habeas corpus.  The Court reaches this conclusion because, as more fully explained below, the PCRA was not available to Stinson, and, even if it were, it would not have provided a remedy for his claim.

As observed by Stinson, "[a] PCRA petition may only be filed after an appellant has waived or exhausted his direct appeal rights."  Baker v. Horn, 210 F. Supp. 2d 592, 615 n.17 (E.D. Pa. 2002) (quoting Commonwealth v. Leslie, 757 A.2d 984, 985 (Pa. Super. Ct. 2000).  At the time the delay that forms the basis for his claim occurred, Stinson's direct appeal proceedings still were pending, and those proceedings could not conclude until the trial court conducted the remand evidentiary hearing.  Therefore, during that time period, the trial court would not have had jurisdiction to entertain any PCRA petition Stinson would have filed in an attempt to raise his claim that the delay in his direct appeal proceedings was resulting in a violation of his constitutional rights.

More significantly, the PCRA would not have provided a remedy for Stinson's claim. Stinson's claim that his constitutional rights were violated as a result of the delay that occurred during his direct appeal proceedings does not challenge his conviction itself, and therefore, he does not meet any of the requirements for filing for relief under the PCRA.  See generally 42 Pa. Cons. Stat. Ann. § 9543(a).  Rather, as demonstrated through the following discussion, Stinson appropriately presented his claim in a state petition for writ of habeas corpus.

18

In Commonwealth v. West, 868 A.2d 1267, 1269 (Pa. Super. Ct. 2005), the defendant asserted through a state petition for writ of habeas corpus a violation of his right to due process as a result of a nine-year delay that occurred between the time he was sentenced and the time he was taken into custody to serve his sentence as a result of a failure by the appropriate authorities to recall him on an appeal bond.  The Pennsylvania Superior Court determined that the PCRA did not provide a remedy for the defendant because his claim did not challenge the legality of his conviction and sentence, but instead alleged that the delay itself resulted in a violation to his constitutional rights.  Id. at 1272.   The Commonwealth appealed.  Although the Pennsylvania Supreme Court reversed the decision that the defendant was entitled to relief as to his due process claim, the Court agreed that the claim was properly asserted through a state petition for writ of habeas corpus.  Commonwealth v.West, 938 A.2d 1034, 1045 (Pa. 2007).

In a more recent decision, Commonwealth v. Burkett, 5 A.3d 1260 (Pa. Super. Ct. 2010), the Pennsylvania Superior Court determined that a defendant's claim that his right to due process was violated as a result of a fifteen-year delay in holding an evidentiary hearing on his PCRA petition was cognizable under the PCRA, and therefore, was not properly presented in a state habeas petition.  In reaching its conclusion, the Burkett court reasoned that, because the underlying argument made by the defendant regarding the delay in his PCRA proceedings related directly to the effectiveness of his attorneys in setting forth his claims challenging his conviction and sentence, he was, "in fact, asserting that the truth-determining process, which includes the PCRA process, was undermined by both constitutional violations, i.e., due process violations, and ineffective assistance of counsel during his PCRA matter."  Burkett, 5 A.3d at 1275.

Burkett is, however, distinguishable from the circumstances presented in the instant case because in Burkett, direct appeal proceedings had concluded, and thus the PCRA was available to the defendant in that case, and the Court found that he could amend his PCRA petition to include his due process claim.  Id. at 1275 n.8.  Here, Stinson's direct appeal proceedings had not concluded at the time the delay occurred, and therefore, the PCRA was not available to him as a remedy.  Moreover, Stinson's claim is not limited to a claim that his attorney was ineffective in failing to take action to ensure that the evidentiary hearing on remand was scheduled, but also asserts a violation of his right to due process as a result of the delay itself.  The PCRA does not provide a remedy for that claim.

Based on the foregoing, the Court concludes that Stinson properly presented his claim that his constitutional rights were violated by the delay in his direct appeal proceedings in his state petition for writ of habeas corpus filed with the Pennsylvania Supreme Court.  The Court also finds that, even though the trial court conducted the hearing on remand before the Pennsylvania Supreme Court ruled on that petition, and the Pennsylvania Supreme Court did not provide any analysis of Stinson's claim in denying his petition, the claim is nevertheless exhausted.  With regard to the lack of analysis of Stinson's claim, the Court observes that, by order dated November 13, 2006, the Pennsylvania Supreme Court granted Stinson's application for leave to file original process, but denied his petition for writ of habeas corpus.  (See Doc. No. 5-2 at 14.)   The order does not contain any analysis of Stinson's claim or reasoning for the denial of his petition.  (See id.)  Despite this lack of analysis, because the Pennsylvania Supreme Court granted Stinson's application to file the petition, and the issue was properly presented to that court in the form of a state habeas petition, this Court is required to find that the claim

within Ground 1 has been exhausted because "[t]he exhaustion requirement of 28 U.S.C. §

2254(b)-(c) has been judicially interpreted to mean that claims must have been <u>presented</u> to the

state courts; they need not have been considered or discussed by those courts." <u>Swanger</u>, 750

F.2d at 295 (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971) (emphasis in original); <u>see also</u>

<u>United States ex rel. Geisler v. Walters</u>, 510 F.2d 887, 892 (3d Cir. 1975).  Moreover, this

Court's review of the claim set forth in Ground 1 in disposing of the instant petition will be <u>de</u>

<u>novo</u>.  <u>See</u> <u>Taylor v. Horn</u>, 504 F.3d 416, 429 (3d Cir. 2007) (observing that, where state court

has not reached merits of a claim thereafter presented to federal habeas court, deferential

standards provided by AEDPA do not apply, and therefore, federal habeas courts "must conduct

a <u>de</u> <u>novo</u> review over pure legal questions and mixed questions of law and fact").  The Court

now turns to an analysis of the merits of Stinson's claims.

### B.     Scope of Habeas Review

AEDPA revised the standard of review for cases challenging state convictions pursuant

to 28 U.S.C. § 2254.  <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996).  Section 2254(a)

provides that the district court "shall entertain an application for a writ of habeas corpus on

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States."  Exhausted

claims that have been adjudicated on the merits by the state courts are subject to review under

the standard of whether they are "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or "resulted

in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).

A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000); see Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir. 1999) (for a decision to be "contrary to" federal law, "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court"). In determining whether federal law is "clearly established," the focus is on the federal law clearly established at the time of the pertinent state court decision. Greene v. Palakovich, 606 F.3d 85, 106 (3d Cir. 2010).

A state court decision represents an "unreasonable application of" Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In a more recent decision, the Supreme Court observed that this distinction between an incorrect application and an unreasonable application creates a substantially higher threshold for obtaining habeas relief and imposes a highly deferential standard for evaluating state-court rulings. Renico v. Lett, 130 S. Ct. 1855, 1862 (2010). The Supreme Court further observed that AEDPA "'demands that state-court decisions be given the benefit of the doubt.'" Id. (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam).

In addition, pursuant to 28 U.S.C. § 2254(e)(1), a federal court is required to presume

that a state court's findings of fact are correct.  A habeas petitioner must rebut this presumption with "clear and convincing evidence" of the state court's error. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).  This presumption of correctness applies to both explicit and implicit findings of fact.  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if a court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

## IV.   DISCUSSION

### A.   Seven-Year Delay

Stinson argues that the seven-year delay in his direct appeal proceedings that occurred from the date that the Superior Court remanded his case on February 19, 1999, until the trial court conducted the remand hearing on October 18, 2006, violated his constitutional rights as

specified above because the delay resulted in evidence being lost or destroyed and witnesses either not able to be located or having diminished memories.  (See Doc. No. 1 at 11.)  As set forth in Section II. A. supra, this claim was presented to the Pennsylvania Supreme Court in a state petition for writ of habeas corpus, but not analyzed by the court in denying Stinson's petition, and therefore, this Court's review of this claim is de novo.  See Taylor, 504 F.3d at 429.

The Supreme Court has not explicitly recognized a criminal defendant's right to a speedy appeal.  Simmons v. Beyer, 44 F.3d 1160, 1169 (3d Cir. 1995).  However, in Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987), the United States Court of Appeals for the Third Circuit held that "the Speedy Trial clause of the Sixth Amendment applies from the time an accused is arrested or criminally charged . . . up through the sentencing phase of prosecution . . . - in other words, until one final, pre-appellate determination has been made as to whether and for how long the accused should be incarcerated."  Burkett, 826 F.2d at 1220.  Accordingly, the Third Circuit held that "[t]he Due Process clause . . . guarantees a reasonably speedy appeal if the state has chosen to give defendants the right to 'attempt [ ] to demonstrate that the conviction, and the consequent drastic loss of liberty, is unlawful.'"  Id. at 1221 (quoting Evitts v. Lucey, 469 U.S. 387, 396 (1985)).  In the Commonwealth of Pennsylvania, the right to an appeal is guaranteed by the state constitution.  Pa. Const. Art. V, § 9 ("[t]here shall . . . be a right of appeal . . . from a court of record . . . to an appellate court . . . .").  Because the Commonwealth has chosen to give defendants the right to a direct appeal, the Court must consider whether the delay during Stinson's direct appeal proceedings violated his right to due process.

The circumstances in Burkett are distinguishable from those in the instant case because in

Burkett, the delay occurred before the petitioner received any direct appellate review of his conviction whatsoever, and here, the delay occurred after the Pennsylvania Superior Court had reviewed the judgment of sentence, but before direct appeal proceedings were completed in that the Superior Court had directed remand of the case to the trial court for an evidentiary hearing on ineffective assistance of counsel claims. Nevertheless, the Third Circuit observed that, "[w]here post-verdict delays not only impede sentencing but also the appeal as of right, the [due process] clause is doubly implicated. 'Due process can be denied by any substantial retardation of the appellate process.'" Burkett, 826 F.2d at 1221 (quoting Rheuark v. Shaw, 628 F.2d 297, 302 (5th Cir. 1980) (emphasis added)). In the instant case, although the delay occurred after the initial appellate review, it nevertheless prolonged Stinson's direct appeal proceedings. Thus, the Speedy Trial clause of the Sixth Amendment clause remained applicable during that time period, and the analytical framework in Burkett is applicable in analyzing Stinson's due process claim set forth in Ground 1 of the petition.

In Barker v. Wingo, 407 U.S. 514, 530 (1972), the United States Supreme Court devised a four-factor test for analyzing due process claims stemming from an alleged denial of a speedy trial. In Burkett, the Third Circuit concluded that the application of this four-factor test also is appropriate in determining whether a delay in direct appeal proceedings has violated a petitioner's right to due process. 826 F.2d at 1222. The four Barker factors are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker, 407 U.S. at 530. In setting forth the four factors, the Barker Court stated as follows:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the

25

> right of speedy trial.  Rather, they are related factors and must be
> considered together with such other circumstances as may be
> relevant.  In sum, these factors have no talismanic qualities; courts
> must still engage in a difficult and sensitive balancing process.

Id. at 533.

In the instant case, the first three Barker factors weigh in favor of Stinson in that the

seven year delay between the Pennsylvania Superior Court's issuance of a directive remanding

his case to the trial court on February 19, 1999, and the occurrence of the hearing before the trial

court on October 18, 2006, is notably prolonged.  As observed in the Court's September 11,

2009 memorandum and order determining that the instant petition is timely, no reason for the

delay is apparent from the record.  Moreover, it is apparent from review of the attachments to

Stinson's state habeas petition (Doc. No. 26 at 76-87, Doc. No. 26-2 at 1-52) that he made

numerous attempts to assert his right by making inquiries as to the status of the scheduling of the

remand hearing.  His filing of the state habeas petition in 2006 (Doc. No. 26 at 44-75), as well as

his prior attempt to expedite the scheduling of the remand hearing by filing a petition for review

with the Pennsylvania Supreme Court in 2002, which was denied by order dated May 16, 2002

(Doc. No. 26 at 78), also support a conclusion that he asserted his rights.

With regard to the consideration of the fourth Barker factor relating to prejudice to the

defendant, the Burkett court reminded that "[p]roof of prejudice is generally a necessary but not

sufficient element of a due process claim."  Burkett, 826 F.2d at 1221 (quoting United States v.

Lovasco, 431 U.S. 783, 790 (1977).  In addition, the court stated that the prejudice factor "does

not run fully concurrently when examining delays in sentencing and delays in initiating appellate

review."  Id. at 1222 (comparing Smith v. Hooey, 393 U.S. 374, 378-80 (1969), with Rheuark,

628 F.2d at 303 n.8).  Thus, in considering the prejudice to a defendant resulting from a delay in

26

appellate proceedings, courts should consider the following three interests in promoting prompt

appeals:

> (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.

Id. (quoting Rheuark, 628 F.2d at 303 n.8).

In considering the first interest set forth above, the Court observes that, although the

delay

occurred within Stinson's direct appeal proceedings, in remanding his case to the trial court for

an evidentiary hearing on ineffective assistance of counsel claims, the Superior Court did not

vacate his judgment of sentence; rather, it affirmed it pending resolution of the ineffective

assistance claims.  (See Doc. No. 39 at 55.)  In taking this course, the Superior Court cited

Commonwealth v. Pearson, 685 A.2d 551, 559 (Pa. Super. Ct. 1996), wherein the court held that,

in remanding a case on an ineffective assistance claim, a court either must affirm the judgment of

sentence based upon a finding that the judgment of sentence is proper pending resolution of the

remanded claim, or, where the trial court has committed an error, vacate the judgment.  (See id.)

Further, following the trial court's consideration of the ineffective assistance claims on remand,

it found that trial counsel was not ineffective, and this finding was upheld by the Superior Court

on appeal.  In light of this outcome, it cannot be said that Stinson's incarceration during the time

of the delay in his direct appeal proceedings was oppressive.

In considering the second interest set forth above, the Court acknowledges that Stinson

must have suffered great anxiety in awaiting the scheduling and outcome of his evidentiary

27

hearing.  Even so, as the Third Circuit stated in <u>Heiser v. Ryan</u>, 15 F.3d 299, 305 (3d Cir. 1994), in affirming the finding that a defendant was not prejudiced by a thirteen-year delay by the trial court in deciding his motion to withdraw his guilty plea: "[A]lthough we do not depreciate the significance of personal prejudice in the form of anxiety as an element to be considered in the <u>Barker</u> analysis, we have previously recognized that a certain amount of anxiety is bound to accompany criminal charges, and only unusual or specific problems of personal prejudice will satisfy the <u>Barker</u> test."  15 F.3d at 305 (citation omitted).

Finally, in considering the third interest set forth above, the Court must consider that the evidentiary hearing, although significantly delayed, eventually did occur, and that the trial court thereafter disposed of Stinson's four ineffective assistance of counsel claims, and provided its analysis of the claims in its January 22, 2007 memorandum.  (Doc. No. 39 at 58-65.)  Stinson also obtained appellate review of these claims through his appeal to the Pennsylvania Superior Court, and the Superior Court provided its analysis of these claims in its November 28, 2007 memorandum.  (Doc. No. 39 at 67-80.)  Although Stinson alleges in setting forth the ground relating to this claim in the instant petition that the delay resulted in evidence being lost or destroyed and witnesses either not able to be located or having diminished memories, he has not specifically alleged how lost evidence and/or witnesses impacted the disposition of his four ineffective assistance of counsel claims.  Moreover, any impact of the delay on the disposition of the claims is not evident from the record, particularly where Stinson's trial counsel testified at the remand hearing and was cross-examined by Stinson's counsel. (<u>See</u> Doc. No. 53-2 at 45-100, Doc. No. 53-3 at 1-11.)

Based on the foregoing analysis, the Court finds that Stinson has failed to establish that

28

he suffered prejudice as a result of the delay that occurred in conducting the remand evidentiary hearing.  Because no prejudice resulted, the Court also finds that Stinson has failed to establish a violation of his constitutional rights, and therefore, the Court must deny relief with respect to his claim raised in Ground 1.

### B.    Preliminary Hearing Testimony at Trial

Stinson next argues that the state court disposition of the above-stated issue was arbitrary because the trial court did not rely on case law or statutory authority in overruling the objection to the admission of Joseph Barrett's preliminary hearing testimony at trial.  (See Doc. No. 11, Mem. II, at 19-20.)  He further argues that the state court decision on this issue meets the requirements to obtain relief under 28 U.S.C. § 2254(d)(1), (d)(2), and (e)(1), because the state court ignored Supreme Court precedent establishing that the introduction of prior testimony by a witness at trial is inappropriate absent a "good faith showing of unavailability"; that the prosecution must resort to process if a witness against the accused is within the reach of process; and that the prosecution must show that the defendant had an adequate opportunity to cross-examine the witness at the preliminary hearing.  (Doc. No. 59 at 5-7.)

In reviewing this issue on appeal, the Pennsylvania Superior Court stated that it found no error on the part of the trial court in admitting the preliminary hearing testimony of Joseph Barrett, and further stated that it based its conclusion on the trial court's May 19, 1992 opinion on this issue.[9]  (See Doc. No. 39 at 42.)  The May 19, 1992 opinion contains the following

---

[9] The trial court issued its May 19, 1992 opinion in support of its order denying Stinson's motions for a new trial and/or arrest of judgment.  (See Doc. No. 59-2 at 1.)  It is not clear from the record before this Court whether the trial court issued a separate memorandum opinion pursuant to Pa. R. App. P. 1925(a) following Stinson's filing of a direct appeal nunc pro tunc, or if it stood on its May 19, 1992 opinion; at any rate, the Pennsylvania Superior Court referred to

analysis:

> Joseph Barrett testified at the preliminary hearing. Since the preliminary hearing he moved to Florida. The court has no jurisdiction over Mr. Barrett and he is unavailable to testify. (N.T. p. 151).
>
> When a witness is out of the jurisdiction and can not [*sic*] be effectively served with a subpoena[,] the witness' transcript testimony may be read into the record at a subsequent proceeding provided the opposing parties had an opportunity to cross-examine the witness at the initial hearing. 42 Pa. Cons. Stat. § 5917. The court did not err when it allowed Mr. Barrett's transcript testimony.

(Doc. No. 59-2 at 9-10.)   The statute referred to by the trial court, 42 Pa. Cons. Stat. § 5917,

entitled Notes of evidence at former trial, provides as follows:

> Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue.

42 Pa. Cons. Stat. § 5917.

The issue raised by Stinson in Ground 2 implicates the Sixth Amendment guarantee that

"[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

witnesses against him." U.S. Const. amend. VI. In Crawford v. Washington, 541 U.S. 36, 53-54

(2004), the Court held that the confrontation clause of the Sixth Amendment bars "admission of

testimonial statements of a witness who did not appear at trial unless he was unavailable to

---

the May 19 opinion in disposing of Stinson's direct appeal.

testify, and the defendant had had a prior opportunity for cross examination."[10]  See United

States v. Jiminez, 513 F.3d 62, 76-77 (3d Cir. 2008).  The Supreme Court has stated that "the

Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-

examination that is effective in whatever way, and to whatever extent, the defense might wish."

Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (citing Ohio v. Roberts, 448 U.S. 56, 73 n.12

(1980)).  In Roberts, the Court concluded that "[a] holding that every case involving prior

testimony requires such an [effectiveness] inquiry would frustrate the principal objective of

generally validating the prior-testimony exception in the first place – increasing certainty and

consistency in the application of the Confrontation Clause."  448 U.S. at 73.

In the instant case, pursuant to Crawford, allowing Barrett's preliminary hearing

testimony to be read into the record at trial would not violate the Rules of Evidence or the

Confrontation Clause if Barrett were unavailable to testify at trial and Stinson had a prior

opportunity to cross-examine him.  The trial court determined both that Barrett was unavailable

to testify at trial in that he had moved to Florida, and thus was out of the jurisdiction and could

not effectively be served with a subpoena, and that Stinson, through counsel, had the opportunity

---

[10] The Court notes that Crawford was decided after Stinson was convicted and that new constitutional rules of criminal procedure are "generally applicable only to cases that are still on direct review."  Whorton v. Bockting, 549 U.S. 406, 416 (2007).  "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."  Teague v. Lane, 489 U.S. 288, 301 (1989).  Crawford created a "new rule." Danforth v. Minnesota, 552 U.S. 264, 268-69 (2008).  A case becomes final when "'the availability of appeal' has been exhausted or has lapsed, and the time to petition for certiorari has passed."  Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711 n.14 (1974).  In the instant case, as set forth in the Court's September 11, 2009 memorandum, Stinson's direct appeal proceedings did not become final until February 22, 2007 (see Doc. No. 48 at 8), and therefore the "new rule" created by Crawford is applicable in the context of the instant review of Stinson's petition for writ of habeas corpus.

to cross-examine Barrett at the preliminary hearing.  (See Doc. No. 59-2 at 9-10.)

Significantly, Stinson does not dispute that he had the opportunity to cross-examine

Barrett at the preliminary hearing.  He also fails to point to any United States Supreme Court

case that directly conflicts with the trial court's application of 42 Pa. Cons. Stat. § 5917 in this

situation such that an "unreasonable application of clearly established Federal law" has occurred.

28 U.S.C. § 2254(d)(1) (comma omitted).  Moreover, based on the evidence presented that

Barrett had moved to Florida, and thus a subpoena could not effectively be served, and that he

had been subject to cross-examination on his preliminary hearing testimony, the trial court's

determination that 42 Pa. Cons. Stat. Ann § 5917 was properly applied to allow his preliminary

hearing testimony to be read at trial, and the Pennsylvania Superior Court decision upholding

that determination, were not "based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. 2254(d)(2).  Consequently,

Stinson's claim set forth in Ground 2 is without merit.

### C.    Fingerprint Evidence and Photo Array

In its May 19, 1992 opinion, the trial court provided the following recitation and

discussion of the issue that now is set forth as a claim in Ground 3 of the instant petition:

> Did the trial court err when it allowed a blow-up of Charles
> Stinson's fingerprint and a photo array into evidence?
>
> First, the Commonwealth introduced a fingerprint of Charles
> Stinson's right middle finger.  It then introduced an enlargement of
> the print.  Defense counsel strenuously objected to any reference to
> the enlarged prints because the defense did not have an opportunity
> to inspect as mandated by the Pennsylvania Rule of Criminal
> [P]rocedure Rule 305.  (N.T. p. 54-58).
>
> According to Rule 305, the Commonwealth must disclose to
> defense counsel any tangible objects including fingerprints.  The

Commonwealth shall, when applicable, permit defense counsel to inspect and copy or photograph the items.

The defense knew the fingerprint existed.  Trooper Fox testified about the fingerprint during the preliminary hearing.  Hence, defense counsel and Mr. Stinson knew of the fingerprint.  Moreover, the Commonwealth's open file policy permitted defense counsel to inspect, copy, or photograph such items.

The fact that the Commonwealth enlarged the fingerprint in anticipation of litigation is of no consequence.  The print was properly authenticated, relevant, and provided the jury with visual assistance.  Thus, the trial court properly allowed the fingerprint exhibit into evidence.

Charles Stinson also argues that he knew of only one photo array.  At the trial he learned of a second photo array.  (N.T. p. 117).  Both arrays contained six photos, five similar and only one different.  (N.T. p. 118).  The Court found no prejudice to Mr. Stinson by the introduction of the two arrays.  (N.T. p. 118).

The Court in its discretion may permit introduction of photographic evidence.  Only an abuse of discretion will constitute reversible error.  We find no abuse of discretion.

(Doc. No. 59-2 at 8-9.)

The Pennsylvania Superior Court analyzed this issue as follows in disposing of Stinson's

direct appeal from his judgment of sentence:

In his second allegation of error, [Stinson] argues that the Commonwealth violated Pa. R. Crim. P. 305(B)[11]by failing to produce the photo array admitted as Commonwealth Exhibit No. 9, as well as a partial fingerprint used for identification at trial.  [Stinson], however, does not dispute the Trial Court's determination that the Commonwealth maintained an 'open file' policy.  Likewise, [Stinson] does not assert that the photo array and fingerprint were unavailable for inspection pursuant to this 'open file' policy.  Thus, [Stinson] fails to establish that the Commonwealth violated the discovery rules by not making the array available for inspection.

---

[11]Pa. R. Crim. P. 305 subsequently was renumbered as Pa. R. Crim. P. 573.

(Doc. No. 39 at 46-47.)

In presenting this issue in Ground 3 of the instant petition, Stinson argues that the "open

file" policy was not mentioned in the certified record, but rather is mentioned solely in the trial

court's opinion.  (See Doc. No. 11 at 10.)  He therefore argues that, "under federal and state case

law authorities" the "arbitrary disposition" of the issues he presents in Ground 3 by the state

courts "is unequivocally established," and in support of his argument, cites Baker v. Horn, 210 F.

Supp. 2d 592, 627 (E.D. Pa. 2002), for the proposition that a fact cannot become of record solely

by its inclusion in the trial court's opinion.  (Id.)  We construe this argument as a claim that the

state court determination on this issue was an unreasonable determination of the facts in light of

the evidence presented.

Stinson also submits that the decisions of the trial court and Superior Court were contrary

both to Pennsylvania Supreme Court and United States Supreme Court precedent, including

Brady v. Maryland, 373 U.S. 83 (1963).  (Id. at 11.)  In Brady, the Court held "that the

suppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good

faith or bad faith of the prosecution."  373 U.S. at 87.  However, in his state court proceedings,

where Stinson failed to dispute that the open file policy was maintained, and did not assert that

the photo array and fingerprint evidence were unavailable despite this policy, he has failed to

establish that the determination by the Pennsylvania Superior Court that a discovery violation

had not occurred was an unreasonable determination in light of the evidence presented.  Further,

where the Superior Court found that no discovery violation had occurred, it would have had no

basis to engage in a due process analysis pursuant to Brady.  Consequently, Stinson also has not

demonstrated that an "unreasonable application of clearly established Federal law" has occurred,

and the Court finds that his issue presented in Ground 3 is without merit.


### D.   Sufficiency of the Evidence

In its May 19, 1992 opinion, the trial court utilized the following standard for evaluating

sufficiency of the evidence:

> To evaluate sufficiency of the evidence a court must accept as true all
> the evidence upon which the finder of fact could properly have
> reached its verdict, and give the verdict winner the benefit of all
> reasonable inferences arising from that evidence.  Commonwealth v.
> Jones, 312 Pa. Super. 496, 459 A.2d 11 (1983).  Then the court must
> determine whether the Commonwealth produced enough evidence to
> prove the offenses charged beyond a reasonable doubt.
> Commonwealth v. Taylor, 324 Pa. [Super.] 420, 471 A.2d 1228
> (1984).

(Doc. No. 59-2 at 5.)  The trial court then observed that Stinson argued that Dr. Blackburn's

eyewitness identification of him was unreliable and insufficient to establish him as the

perpetrator of the crimes beyond a reasonable doubt.  The trial court then set forth the following

standard for determining the reliability of a witness' identification:

> Where the opportunity for positive identification is good and the
> witness is positive in his identification and his identification is not
> weakened by prior failure to identify, but remains, even after cross-
> examination, positive and unqualified, the testimony as to
> identification need not be received with caution . . . but . . . may be
> treated as the statement of fact.  Id. at 548.

(Id.)  The trial court summarized the relevant facts as follows:

> Dr. Blackburn testified that he wrestled with the intruder from the
> bedroom of his apartment to the living room, and finally to the sliding
> glass door where he managed to throw the intruder out.  (N.T. p.
> 199).  Although Dr. Blackburn had been wounded during the
> struggle, he did not become aware of the stab until he extricated the

> intruder.  During the struggle, his attention remained fixed on the
> intruder whose face (N.T. pp. 200-203) was a foot or two from his.
> (N.T. p. 218).  Dr. Blackburn made a clear and positive identification
> of Charles Stinson as the intruder.  (N.T. pp. 202, 203, 221).

(Id. at 5-6.)  Based upon these facts, the trial court concluded that: "Dr. Blackburn had ample opportunity to see the Defendant.  His identification was not weakened by a prior failure to identify nor did it waiver on cross-examination; hence, his testimony could have been received by the jury as a statement of fact."  (Id. at 6.)

The trial court then considered Stinson's argument that fingerprint evidence that was introduced through Trooper Fox and Lieutenant Gowden's testimony as to the manner in which the intruder pried the screens away from the apartment windows at the Tall Trees Apartment Complex was insufficient to find him guilty of the crimes charged.  (Id.)  The trial court observed that, the Commonwealth "need not establish guilt to a mathematical certainty" and "may in the proper case rely wholly on circumstantial evidence."  (Id. (citing Commonwealth v. Bailey, 292 A.2d 345 (Pa. 1972).)  The trial court reasoned that, "Although the evidence may be circumstantial, the jury as fact finder must weigh the evidence.  Thus, accepting as true all the evidence upon which the fact finder could have reached its verdict, we find the evidence sufficient to find Charles Stinson guilty beyond a reasonable doubt."  (Id. at 6-7.)

In reviewing this issue on direct appeal, the Pennsylvania Superior Court was guided by the standard for reviewing the sufficiency of the evidence in Pennsylvania, which it stated as follows:

> It is well settled that the test for determining the sufficiency of the
> evidence is whether, viewing the evidence in the light most
> favorable to the Commonwealth as verdict winner and drawing all
> proper inferences favorable to the Commonwealth, the trier of fact
> could have determined [that] all the elements of the crime have

been established beyond a reasonable doubt.

(Doc. No. 39 at 50 (quoting <u>Commonwealth v. Hagan</u>, 654 A.2d 541, 543 (Pa. 1995)).  The Superior Court observed that, on appeal, Stinson "challenges only the sufficiency of the identification evidence presented by the Commonwealth."  (<u>Id.</u> at 51.)  The Court concluded: "Upon review of the certified record and the arguments of the parties, we agree with the Trial Court's determination that the evidence is sufficient to sustain the verdicts."  (<u>Id.</u>)  In reaching this conclusion, the Superior Court specified that it was affirming "based upon the trial court's opinion dated May 19, 1992, with regard to this issue."  (<u>Id.</u>)

In presenting argument in support of Ground 4 of the instant petition regarding sufficiency of the evidence, Stinson does not argue that the determination of the Pennsylvania state courts was contrary to federal law.  Instead, he voices his disagreement with the Pennsylvania Superior Court's above-referenced observation that he only was challenging the sufficiency of identification evidence on appeal.  (<u>See</u> Doc. No. 11 at 4-5 ¶ 3 (citing Doc. No. 39 at 51).)  He refers to a copy of a document he identifies as an excerpt of his brief on appeal to the Pennsylvania Superior Court and asserts that it is proof that his "habeas claim about insufficient evidence was substantiated by arguments."  (<u>See</u> <u>id.</u> (citing Doc. No. 11 at 26-30).)

"[T]he federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's <u>collateral</u> proceeding does not enter into the habeas calculation."  <u>Hassine v. Zimmerman</u>, 160 F.3d 941, 954 (3d Cir. 1998) (emphasis added).  Thus, Stinson's claim that the Pennsylvania Superior Court erred in its interpretation of the record before it on appeal is not subject to review through the instant habeas petition.  Rather, in the

context of the instant petition, this Court's review is limited solely to a claim that the
determinations by the Pennsylvania state courts on Stinson's sufficiency of the evidence claim
were "contrary to, or involved an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States," or "resulted in a decision that was
based on an unreasonable determination of the facts in light of the evidence presented in the
State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

　　　In considering whether the state court determination that the evidence was sufficient to
sustain Stinson's guilty verdicts is contrary to clearly established Federal law, the Court is
mindful that the standard of review used by a federal court to address a sufficiency of the
evidence claim is "whether after viewing the evidence in the light most favorable to the
prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, <u>reh'g denied</u>, 444 U.S. 890
(1979) (emphasis in original). Although direct evidence may be more probative of a fact,
circumstantial evidence alone may suffice for a finding of guilt beyond a reasonable doubt. <u>Id.</u>
at 324-25; <u>see also</u> <u>Fed. Power Comm'n v. Fla. Power & Light Co.</u>, 404 U.S. 453, 469 & n.21
(1972) ("[E]ven in criminal cases, guilt beyond a reasonable doubt often can be established by
circumstantial evidence.") (quoting <u>Ind. & Mich. Elec. Co. v. Fed. Power Comm'n</u>, 365 F.2d
180, 184 (7th Cir. 1966)). Moreover, the credibility of witnesses, the resolution of conflicts of
evidence, and the drawing of reasonable inferences from proven facts all fall within the
exclusive province of the fact finder, and therefore, are beyond the scope of federal habeas
review. <u>Id.</u> at 309.

　　　The standard applied both by the trial court and the Pennsylvania Superior Court in

reviewing Stinson's sufficiency of the evidence claim on direct appeal, as articulated in

Pennsylvania case law, is indistinguishable from the <u>Jackson</u> standard.  (<u>See</u> Doc. No. 59-2 at 5;

Doc. No. 39 at 50.)  Based upon the application of this standard, it was within the discretion of

the jury to credit Dr. Blackburn's identification testimony, particularly where, as observed by the

trial court, his testimony established that he had ample opportunity to see his attacker, and his

identification was not weakened by a prior failure to identify and did not waiver on cross-

examination.  The Court finds that the state court determination was not contrary to, or an

unreasonable application of clearly established Federal law, and also was not based on an

unreasonable determination of the facts in light of the evidence presented.  Consequently, there

is no basis to grant federal habeas relief to Stinson on this claim.

### E.        Ineffective Assistance in Failing to Request a Curative Instruction

In Grounds 5 through 9 of the instant petition, Stinson alleges that his trial counsel

violated his Sixth Amendment right to counsel by providing ineffective assistance of counsel.

Ineffective assistance of counsel claims are governed by the standards established in <u>Strickland</u>

<u>v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the Supreme Court articulated a two-prong

test which must be satisfied for a petitioner to prevail on an ineffective assistance of counsel

claim.  The first prong requires a petitioner to demonstrate that his trial counsel's performance

fell below an "objective standard of reasonableness."  <u>Id.</u> at 688.  Therefore, a convicted

defendant asserting ineffective assistance of counsel must identify the acts or omissions that are

alleged not to have been the result of reasoned professional judgment.  <u>Id.</u> at 690.  The

reviewing court must then determine whether, in light of all circumstances, the identified acts or

omissions were outside "the wide range of professionally competent assistance."  <u>Id.</u>  There is a

"strong presumption" that trial counsel's performance was reasonable and might be considered sound trial strategy.  Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).

Under the second prong of Strickland, the defendant must establish that counsel's deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  To establish prejudice, the defendant must demonstrate that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable.  Id.  More specifically, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  "Without proof of both deficient performance and prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, . . . and the sentence or conviction should stand."  Bell v. Cone, 535 U.S. 685, 695 (2002) (internal quotations and citation omitted).  Where there is a reasonable basis for a tactical decision  made by defense counsel, a finding of ineffective assistance cannot be reached.  See Burger v. Kemp, 483 U.S. 776 (1987).  "[S]ubstantial deference is to be accorded counsel's tactical decisions."  United States v. Wiener, 127 F. Supp. 2d 645, 648 (M.D. Pa. 2001).  Likewise, counsel cannot be deemed ineffective for failing to pursue meritless claims or objections.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999); United States v. Fulford, 825 F.2d 3, 9 (3d Cir. 1987).  In such a situation, the second prong of the Strickland test has not been satisfied.

"[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Knowles v.

40

Mirzayance, 129 S. Ct. 1411, 1419 (2009). Thus, habeas review of a Strickland claim is "doubly deferential." Id. at 1420. A petitioner must show that the state court's decision was objectively unreasonable. Woodford v. Visciotti, 537 U.S. 19, 25 (2002). It is not enough to convince a federal habeas court that, in its independent judgment, the state court erred in applying Strickland. Bell, 535 U.S. at 698-99.

In analyzing Stinson's ineffective assistance claim raised in Ground 5 herein in disposing of his direct appeal nunc pro tunc, and in analyzing his ineffective assistance claims raised in Grounds 6 through 9 herein in disposing of Stinson's appeal from the trial court's denial of relief as to those claims on remand, the Pennsylvania Superior Court relied on the following three-part standard, which provides that, to establish a claim of ineffective assistance of counsel, a defendant must show (1) his underlying claim is of arguable merit; (2) defense counsel had no reasonable basis for undertaking or failing to undertake the act or omission in question; and (3) the defendant suffered actual prejudice from the act or omission in that, but for the act or omission in question, the outcome of the proceeding would have been different. (See Doc. No. 39 at 42-43 (citing Commonwealth v. Rainey, 656 A.2d 1326, 1330 (Pa. 1995), cert. denied, 516 U.S. 1008 (1995)); Doc. No. 39 at 70-71 (citing Commonwealth v. Battle, 883 A.2d 641, 645 (Pa. Super. Ct. 2005), appeal denied, 902 A.2d 1238 (Pa. 2006).)[12]

Preliminarily, the Court observes that, although Pennsylvania courts apply a three-prong test in analyzing ineffective assistance claims, and that test was applied by the state court in

---

[12] Although the Pennsylvania Superior Court panels disposing of Stinson's direct appeal nunc pro tunc and of his appeal from the denial of relief with respect to his ineffective assistance claims cited different cases in stating the standard governing their disposition of his ineffective assistance claims, the statement of the standard is substantively the same.

evaluating Stinson's claims, the Third Circuit has held that Pennsylvania's standard for evaluating ineffective assistance claims is not contrary to <u>Strickland</u>.  <u>See</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 106 n.9 (3d Cir. 2005).  Thus, the relevant question in the Court's review is whether the Superior Court's decision with respect to Stinson's ineffective assistance claims involved an unreasonable application of <u>Strickland</u>.  <u>Id.</u>

In Ground 5 of the instant petition, Stinson alleges that the Pennsylvania Superior Court made "arbitrary dispositions" of his claim that his trial counsel was ineffective for failing to object and request a curative instruction as to improper comments made by the prosecutor.  (<u>See</u> Doc. No. 11 at 15-19.)  He claims that the disposition was arbitrary because the Superior Court improperly narrowed its review to only two instances of alleged improper comments by the prosecutor.  (<u>See</u> <u>id.</u> at 15-16.)  Stinson alleges that, in his brief on appeal to the Superior Court, he presented additional examples of instances in which the prosecutor made allegedly improper comments, and that, because the Superior Court did not address these examples in disposing of his appeal, his rights to due process and equal protection of the law have been violated.  (<u>See</u> <u>id.</u> at 16-17.)  He attaches a copy of a document he identifies as an excerpt of his brief on appeal to the Pennsylvania Superior Court as proof that he presented these additional examples.  (<u>See</u> <u>id.</u> at 16 ¶ 3 (citing Doc. No. 11 at 36-40).)

Stinson made this same argument with regard to his sufficiency of the evidence claim in Ground 4.  Stinson's claim that the Pennsylvania Superior Court erred in its interpretation of the record before it on appeal is not subject to review through the instant habeas petition.  <u>See</u> <u>Hassine</u>, 160 F.3d at 954.  Rather, in reviewing Stinson's claim that his trial counsel was ineffective for failing to object and to request a curative instruction as to alleged improper

comments made by counsel for the Commonwealth during opening and closing statements, the

Court's review is limited only to whether the state court determination on the issue was contrary

to Strickland.  In disposing of this claim, the Superior Court found that, as to each of the three

instances of prosecutorial misconduct alleged by Stinson, he could not establish the first element

of an ineffectiveness claim, namely, that his underlying claim was of arguable merit.  (See Doc.

No. 39 at 52 (citing Rainey, 656 A.2d at 1330).)  The Superior Court provided the following

framework for its analysis of Stinson's underlying claim of prosecutorial misconduct:

> Generally, comments by a prosecutor do not constitute reversible
> error unless the unavoidable effect of such comments would be to
> prejudice the jury, forming in their minds fixed bias and hostility
> toward the defendant so that they could not weigh the evidence
> objectively and render a true verdict.  Commonwealth v. D'Ambro,
> 500 Pa. 303, 309-10, 456 A.2d 140, 144 (1983).   However,
> prosecutorial misconduct will not be found where comments were
> based on the evidence or proper inferences therefrom or were only
> oratorical flair.  Commonwealth v. Marshall, 534 Pa. 488, 509, 633
> A.2d 1100, 1110 (1993).

(Doc. No. 39 at 52.)

The Superior Court then turned to Stinson's first alleged instance of prosecutorial

misconduct, which he alleged occurred when the prosecutor stated: "To stick it in somebody's

gut and in their heart.  If that's not a specific intent to kill, then nobody should be found guilty of

murder."  (Id. (citing Stinson's Brief at 43 (quoting N.T., 3/14/89, at 28.)).)  The Superior Court

concluded that, based on its review of the record, the prosecutor's statement represented a fair

comment on the evidence, but that, more importantly, Stinson could not establish prejudice

resulting from his counsel's failure to object to the comment and to request a cautionary

instruction because the jury acquitted Stinson of the crime of attempted murder.  (Id. at 52-53.)

The Court therefore found that any inference that Stinson possessed a specific intent to kill was

negated by the acquittal on this charge.  (Id.)

Stinson's next allegation of an improper comment by the prosecutor related to an alleged misrepresentation of the evidence by the prosecutor in explaining to the jury that Stinson "had testified that, on a visit to Tall Trees on another occasion, he had rang a doorbell."  (Id. at 53.) Stinson alleged that this statement misrepresented the evidence because he testified that he knocked on a door of an apartment that he believed belonged to his friends.  (Id.)  The Superior Court analyzed this claim as follows:

> Although the prosecutor misstated the manner in which Appellant announced his arrival, we do not find that this misstatement prejudiced the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weight the evidence objectively and render a true verdict.  Commonwealth v. D'Ambro.

(Id.)

Stinson's third allegation of an improper comment by the prosecutor related to a comment as to the timing of a visit Stinson made to his girlfriend.  In disposing of this claim, the Pennsylvania Superior Court found that, based upon an instruction given by the trial court to the jury, the prosecutor's statements did not warrant the grant of a new trial.  (Doc. No. 39 at 53-54.) Specifically, the Pennsylvania Superior Court noted that the trial court instructed the jury as follows:

> In their arguments counsel will ask you to call to your attention the evidence which they consider material and will ask you to draw certain inferences from that evidence.  Keep in mind, however, that you are not bound by their recollection of the evidence.  It is your recollection of the evidence, and your recollection alone which must guide your deliberations.  If there is a descrepancy [sic] between counsels' recollections and your own recollection, you are bound by your own recollection, nor are you limited in your consideration of the evidence to that which is mentioned by counsel.

44

(Id.)

Upon review of the record as to Ground 5 of the petition, the Court finds that the state court reasonably concluded that, as to each of the three instances of prosecutorial misconduct alleged by Stinson, the comment at issue would not prejudice the jury.  Therefore, the state court determination that Stinson failed to establish that his underlying claim of prosecutorial misconduct had underlying merit, and that, as a result, he failed to establish an ineffective assistance of counsel claim, was not an unreasonable application of Strickland, and the Court therefore declines to disturb the state court finding on this issue.

**F.    Ineffective Assistance of Counsel for Failure to Object to Hearsay Testimony**

The Pennsylvania Superior Court summarized the background relevant to the issues presented in Grounds 6 and 7 of the instant petition as follows:

> In August of 1989, [Stinson] was arrested in connection with a series of break-ins occurring on the course of one night in an apartment complex.  At trial, several residents testified as to the events of that evening.  A Dr. Blackburn stated he was stabbed when he wrestled with the intruder, who had entered his bedroom.  At the hospital, Dr. Blackburn described the intruder and identified [Stinson] in a photo array, and at trial, he identified [Stinson] as the intruder.

> Police Lieutenant William Gowden, in the course of his investigation, discovered similar pry marks and other damage on the windows of eight apartments. [footnote citing to Pa. Super. Ct. 2/19/99 Mem. omitted] At trial, Lieutenant Gowden read into the record the preliminary hearing testimony of another witness, a Mr. Barrett, who was not available to testify.  In that testimony, Mr. Barrett described the events of the night in question.  Mr. Barrett was in his living room, where his son was standing at the front door, and 'got a glimpse' of a man walking towards hi son.  (N.T. Trial, 3/12/90, at 154).  Mr. Barrett stated the man he saw looked like Appellant, but could not say with absolute certainty that Appellant was the same man.  (Id. at 154, 157).

45

> After reading the testimony, Lieutenant Gowden testified that he had shown a photo array to Mr. Barrett, a topic not mentioned in Mr. Barrett's read testimony.   Lieutenant Gowden explained that the photo arrays shown to Dr. Blackburn and Mr. Barrett were not identical, as the sixth photos of each were not the same.   At this point, [Stinson's] counsel made the following objection:

>> If we have two different photo arrays, one of them is available and a witness who is not available to testify to these proceedings, identified someone from a photo array that we don't have [sic], I'm strenuously going to object [t]o any testimony on that.

> (Id. at 116).   In response, the Commonwealth minimized the difference between the photo arrays, arguing 'The photo array is here. I simply have to take No. 6.   The photo [Dr. Blackburn saw] is underneath this picture of the photo that Mr. Barrett looked at.   We have the same set up." (Id.)   The Commonwealth also stated that the person in the sixth photo was 'an unidentified person.'   (Id) [Stinson's] counsel renewed this objection:

>> This is the first time that the defense found out there were two different photo arrays available.   Through discovery we have been provided with the photostat of one photo array.   At this late time now the Commonwealth tells us there are two photo arrays.

> (Id. at 117-18).   The Commonwealth replied, '[T]here is no difference between this photo array and the other one except for an insignificant sixth person.' (Id. at 118).   The trial court overruled the objection, finding that because both 'sixth pictures' were available, the jury could evaluate any significance in the difference between the two photo arrays and [Stinson] was not prejudiced. (Id.)   It was later determined that the person in the substituted picture was John Hellman, an alibi witness at trial for [Stinson].

(Doc. No. 39 at 67-69.)

The trial court provided the following summary of the testimony offered by Stinson's trial counsel at the October 18, 2006 remand hearing relating to the issue presented in Ground 6 of the instant petition:

> Mr. Stinson maintains that trial counsel, who in fact did object to the photo array on the grounds that the Commonwealth did not produce

that evidence during pre-trial discovery, was ineffective in failing to object to Lieutenant Gowden's 'impermissible hearsay testimony.' [footnote citing to Stinson's brief omitted] Our evidentiary hearing revealed otherwise.  At the time when Lieutenant Gowden testified, trial counsel made an objection to the testimony regarding witness Barrett's identification, specifically referencing the photo array and the fact that Mr. Barrett was not available for direct or cross examination.  (N.T., 3/12/1990, page 116) When the issue of the Barrett identification was addressed again, during narcotics agent Renee Fofi's testimony, trial counsel objected again, stating that he was 'going to strenuously object to any testimony regarding Mr. Barrett in (sic) the photo array.  It's not available to me for cross-examination purposes." (N.T., page 168)

(<u>Id.</u> at 60.)  The trial court then provided the following analysis of the issue:

The admission of such testimony as a hearsay exception under the circumstances presented to the Court at trial is permitted under Pennsylvania Rule of Evidence 804.  In regard to whether trial counsel specifically stated the phrase 'hearsay testimony' in making his objections, we believe that counsel's utterance of that phrase is not central to our inquiry.  The evidence was twice objected to by trial counsel on the basis that the Barrett identification of the Defendant was being presented and discussed by persons other than the individual who made the positive identification.  Attorney Dolan's objection to Lieutenant Gowden's testimony was timely, concise, and in the best interests of his client.  Mr. Stinson is not able to demonstrate prejudice under his claim that trial counsel was ineffective for failing to object to hearsay, when trial counsel not only objected to the hearsay evidence twice, but also explained to the trial judge on the record the reasons for his objection to Lt. Gowden's hearsay statements concerning the Barrett identification.

(<u>Id.</u> at 61.)

In presenting this issue on appeal to the Pennsylvania Superior Court, Stinson pointed to the fact that the Superior Court panel that disposed of his initial direct appeal found that "[t]here is no doubt that the testimony of Lieutenant Gowden regarding Barrett's identification from the photo array is impermissible hearsay testimony," and that Stinson's trial counsel failed to object to the hearsay testimony.  (Doc. No. 39 at 71 (quoting 2/19/99 Pa. Super. Ct. Mem., Doc. No. 39

47

at 45).)  At the October 18, 2006 evidentiary hearing, Stinson argued that these findings by the

panel that disposed of his initial direct appeal constituted the law of the case, and thus his trial

counsel would be ineffective for failing voice a specific hearsay objection to Lieutenant

Gowden's testimony regarding Barrett's identification from the photo array.  (See id.)

      Nevertheless, as observed by the trial court, and highlighted by the Superior Court in its

November 28, 2007 memorandum, subsequent to the consideration of this issue by the first

Superior Court panel, testimony was elicited from Stinson's trial counsel during the hearing on

remand which established that he had made objections and supporting arguments that, "when

read as a whole, did make a specific hearsay objection."  (Id. at 73.)  The Superior Court

included the following excerpt from trial counsel's testimony in its memorandum:

> So in my opinion I believe that I firmly made an objection based on
> two grounds.  One, I didn't have the opportunity to cross examine
> Mr. Barrett.  So, therefore, it's automatically hearsay.  That is the
> definition.  And, two, [the photo array] was not provided to me
> through discovery despite the fact that I had filed the motions and
> despite the fact that I looked through the Commonwealth's files.

(Id. (quoting N.T. Hearing, 10/18/06, at 45 (Doc. No. 53-2 at 89).)  In reviewing the trial court's

decision on this issue, the Superior Court observed that the trial court determined that counsel's

objections "encompassed the definition of hearsay" in that counsel twice objected to Mr.

Barrett's identification on the basis that his statement was being presented and discussed by

someone else.  (Id. at 73.)  The Superior Court then noted that the trial court found counsel not

only made two hearsay objections to the testimony, but also had explained the basis of his

objections.  (Id.)

      Based on trial counsel's testimony at the evidentiary hearing, and the trial court's

reasoning, the Superior Court concluded that the application of the law of the case doctrine was

not appropriate.  (See id. at 75.)  The Superior Court began its analysis by stating the following

definition of hearsay:

> Hearsay is defined as 'a statement, other than one made by the
> declarant while testifying at the trial or hearing, offered in evidence
> to prove the truth of the matter asserted.'  Pa.R.E. 801(c).

(Id. at 74.)  The Superior Court then set forth the following framework for its analysis of

Stinson's law of the case argument:

> The law of the case doctrine refers to a body of rules 'which embody
> the concept that a court involved in the later phrases of a litigated
> matter should not reopen questions decided by another judge of that
> same court or by a higher court in the earlier phase of the matter.' .
> . . This doctrine applies when a case has been remanded and
> mandates that the trial court may not alter a legal question decided by
> an appellate court in the matter.

(Id. (citing Commonwealth v. Santiago, 822 A.2d 716, 723-24 (Pa. Super. Ct. 2003).)

The Superior Court also set forth the following limitation:

> The law of the case doctrine does not require prophylactic application
> . . . A prior decision may be departed from in 'exceptional
> circumstances such as where there has been an intervening change in
> the controlling law, a substantial change in the facts or evidence
> giving rise to the dispute in the matter, or where the prior holding was
> clearly erroneous and would create a manifest injustice if followed.'

(Id. at 74-75 (citing Santiago, 822 A.2d at 724).)

The Superior Court then applied the foregoing framework to Stinson's issue as follows:

> Here, we find application of the law of the case doctrine is not
> appropriate.  See [Santiago, 822 A.2d at 723-24 (quoting Starr, 664
> A.2d at 1331)].  Although this Court found that trial counsel had not
> made a specific hearsay objection, we are persuaded by counsel's
> testimony and the trial court's reasoning.  Although counsel did not
> utter the word 'hearsay' in his objections, his arguments, made
> multiple times, were that he could not cross-examine Mr. Barrett on
> his out-of-court identification of appellant.   These arguments
> encompass the definition of hearsay and address the concern of

precluded cross-examination of an unavailable declarant on a previously made statement being offered for the truth. See Pa.R.E. 804(c). We conclude that this Court's statement that trial counsel failed to make a proper hearsay objection was erroneous under the holding in Santiago, supra. Instead, we adopt the reasoning of the trial court that counsel did lodge a hearsay objection. Accordingly, we find Appellant has not shown his underlying claim to be of arguable merit, and therefore fails to demonstrate ineffectiveness. See Battle, supra.

(Id. at 75.)

In presenting his issue here, Stinson argues that the Superior Court misapplied the law in relying on Santiago and Starr for application of the law of the case doctrine because those cases pertained to the application of that doctrine among judges of the Court of Common Pleas, and therefore, the cases are inapplicable to the Superior Court, and also because the first panel's decision was "binding precedent" that the second panel was bound to follow. (See Doc. No. 25 at 10.) Stinson also claims that the trial court did not follow the directive issued by the first Superior Court panel in remanding the case. (See Doc. No. 25 at 14-17.) He identifies the directive issued by the Superior Court as: "We believe that the circumstances warrant an evidentiary hearing as to counsel's reasons for not lodging a hearsay objection to Lieutenant's testimony, and whether Appellant suffered prejudice resulting from the failure to lodge an objection. Accordingly, we remand for an evidentiary hearing regarding counsel's ineffectiveness." (See id. at 14 (citing Doc. No. 39 at 46).) The trial court stated the issue in its January 22, 2007 opinion disposing of the issue after the evidentiary hearing as follows: "Whether trial counsel was ineffective in supposedly failing to object to the testimony of Dunmore Police Lieutenant William Gowden concerning the photo array identification of Joseph Barrett?" (Doc. No. 39 at 59.)

50

Stinson's arguments fail to establish that the state court determination on this issue was an unreasonable determination of the facts in light of the evidence presented.  In particular, he fails to demonstrate that the state court unreasonably determined that the application of the law of the case doctrine was inappropriate where trial counsel's testimony at the remand hearing established that he had in fact made an objection at trial that invoked hearsay.  Therefore, there is no basis to provide relief to Stinson on the claim set forth in Ground 6 of the petition.

### G.      Ineffective Assistance of Counsel in Reviewing Second Photo Array

In considering this issue, the trial court found that the record reflected that, while Stinson was correct that his counsel had a duty to investigate the facts and evidence that the Commonwealth intended to introduce against him, he had "misstated or at least mischaracterized his former counsel's trial preparation."  (See Doc. No. 39 at 61.)  The trial court found that the record established that while trial counsel was not aware of the existence of the second photo array until the day of trial, the reason he was unaware was not because he failed to review the Commonwealth's file under its "open file" policy to prepare for trial, but because the Commonwealth did not make the second photo array available in the file to be discovered.  (See id. at 61-62.)  The trial court pointed to the following objection by trial counsel at trial in support of its reasoning:

> Again, I want to renew my same objection.  This is the first time that the defense found out that there were two different photo arrays available.  Through discovery we have been provided with the Photostat on one photo array.  At this late time now the Commonwealth tells us that there are two photo arrays.  It's bad enough that we're getting reports the day before trial but now to find this out . . . (N.T., pages 117-118)

(See id. at 62.)  The trial court concluded that, where trial counsel could not have known of

evidence which was not disclosed to him or made available for discovery, "[t]here is no merit to the claim that trial counsel was ineffective in any way regarding the existence, as well as the significance, of the second photo array, which was not revealed to the defense and to the Court until the trial was underway."  (See id.)

    In reviewing this issue on appeal, the Pennsylvania Superior Court observed that Stinson did not dispute his trial counsel's assertion that he had served a discovery request on the Commonwealth, and that his argument that his counsel was ineffective in failing to discover the photo array thus was premised on an assumption that the photo array was included in the Commonwealth's file when it was made available to trial counsel.  (See Doc. No. 39 at 76.) However, the Superior Court noted that trial counsel had stressed in making his objection at trial that the second photo simply was not in the file when he reviewed it, and that he reiterated this assertion in his testimony at the evidentiary hearing.  (See id. (citing N.T. 3/12/92, at 117-18, N.T. 10/18/06, at 34-35).)  The Superior Court then adopted the trial court's reasoning finding trial counsel's testimony to be credible that the second photo array was not in the Commonwealth's file, but was introduced for the first time at trial.  (See id.)  The court therefore found that Stinson had not shown that his ineffective assistance claim had merit.  (See id.)

    Upon review of this claim, the Court finds that Stinson has failed to establish that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented, including trial counsel's objection at trial emphasizing that the second photo array was not made available in discovery, as well as trial counsel's testimony at the evidentiary hearing reiterating that assertion.  Therefore, the Court does not find that the state court determination that Stinson's underlying claim lacked merit such that he could not establish an

ineffective assistance of counsel claim was an unreasonable application of <u>Strickland</u>.

### H.      Ineffective Assistance of Counsel in Reviewing Fingerprint Evidence

The Superior Court summarized the background relevant to this issue as follows:

> In his third claim, [Stinson] argues that trial counsel was ineffective for failing to discover certain fingerprint evidence, and for failing to retain an expert witness to examine the fingerprints.  At trial, a police officer testified that two partial fingerprints were found on a glass window at one of the apartments.  However, the officer stated that only one of the fingerprints was suitable for testing, and even then, he could only test part of the print and could not identify its age.  Nevertheless, the officer matched the print to one of [Stinson]'s fingers. [Stinson] asserts that trial counsel should have challenged the reliability of the officer's 'substantive identification of the partial latent fingerprint.'  ([Stinson]'s Brief, at 22).  We disagree.

(Doc. No. 39 at 76-77.)

In disposing of this issue in its January 22, 2007 opinion, the trial court observed that Stinson argued that his trial counsel was ineffective for failing to discover fingerprint evidence, and further, in failing to hire his own fingerprint expert.  (<u>See</u> Doc. No. 39 at 62.)  The trial court found that the latter portion of this issue had not been raised in Stinson's direct appeal to the Superior Court, and had not been remanded for consideration at the evidentiary hearing, and therefore, was waived.  (<u>See</u> <u>id.</u> at 62-63.)  The trial court then recounted trial counsel's testimony at the evidentiary hearing that he was "well aware of the fingerprint."  (<u>See</u> <u>id.</u> (citing N.T., Evidentiary Hearing, pp. 35-36).)  Stinson's trial counsel elaborated as follows:

> I discussed it with Mr. Stinson, asked him well, how would your fingerprints get there?  And that's what his testimony came out and showed, that he had a unique way of greeting people.  If he didn't get a response at a door, he would go to a window and he would tap the 'William Tell Overture' on a window.  I distinctly remember that.  I believe he even displayed it during his testimony.

(See id.)  The trial court concluded that, where the theory of defense advanced at trial by

Stinson's counsel on his behalf included a justification for the fingerprint evidence, his trial

counsel "obviously had knowledge of it and had discussed its existence and significance with his

client," and thus any claim that counsel was unaware of the fingerprint was "false," thus

negating the ineffective assistance claim.  (See id.)

In reviewing this issue on appeal, the Pennsylvania Superior Court relied on

Commonwealth v. Duffey, 889 A.2d 56, 61 (Pa. 2005), in which the Pennsylvania Supreme

Court provided the following guidance as to the consideration of ineffective assistance claims

relating to trial strategy:

> Counsel is presumed to have been effective.  Generally, where
> matters of strategy and tactics are concerned, counsel's assistance is
> deemed constitutionally effective if he chose a particular course that
> had some reasonable basis designed to effectuate his client's
> interests.  A claim of ineffectiveness generally cannot succeed
> through comparing, in hindsight, the trial strategy employed with
> alternatives not pursued.

(See Doc. No. 39 at 77 (quoting Duffey, 889 A.2d at 61 (internal citations and quotations

omitted)).)

The Superior Court then recounted the above testimony from Stinson's trial counsel

regarding his trial strategy with regard to the fingerprint evidence, and also recounted trial

counsel's testimony that, "[b]ecause the fingerprint evidence would be admitted, part of his trial

strategy was to explain why the print was there, rather than to dispute the accuracy of the

identification."  (See id.)  The Court also noted counsel's testimony that, because Stinson

testified that he had been at the apartment complex on separate occasions, "[i]t could be a

plausible explanation of why his print was there."  (See id. at 78; Doc. No. 53-2 at 81.)  Finally,

54

the Superior Court recounted trial counsel's testimony that, although Stinson was charged with attempting to burglarize ten or eleven apartments, only one fingerprint was found, and thus his testimony regarding his tapping on the windows could explain the sole fingerprint that was found.  (See id.)

In analyzing the claim, the Superior Court first stated that "trial counsel is presumed to have been effective, and his chosen strategy had some reasonable basis that furthered Appellant's interests."  (See id. (citing Duffey, 889 A.2d at 61).)  In particular, the Court observed that: "Appellant's argument on appeal criticizes not only counsel's trial strategy, but also counsel's opinion that the fingerprint evidence was sufficient to identify him.  Appellant's ineffectiveness claim cannot succeed on hindsight and prediction of what could have transpired had counsel acted on an alternative theory of the case."  (See id. (citing Duffey, 889 A.2d at 61).)  The Court then stated that it agreed with the trial court that the claim did not merit relief.  (See id.)

In reviewing this claim here, we must determine whether the Superior Court's decision involved an unreasonable application of Strickland.  In doing so, we are mindful of the statement in Strickland that "[j]udicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Strickland, 466 U.S. at 689; cf. Engle v. Isaac, 456 U.S. 107, 133-34 (1982).  In this instance, where it was evident from the trial record and the record developed through the remand evidentiary hearing that Stinson's counsel knew of the fingerprint evidence and had devised a

strategy to address it that was consistent with an effort to defend his client, it is clear that the

state court determination that Stinson's claim that his counsel was ineffective for failing to

discover the fingerprint evidence did not merit relief was consistent with <u>Strickland</u> and was

based on a reasonable determination of the facts in light of the evidence presented.

**I.       Ineffective Assistance of Counsel for Failing to Seek Suppression of In-Court Identification**

In advancing the claim set forth in Ground 9, Stinson argues that the photo arrays that

were shown to Blackburn and Barrett were unduly suggestive because Stinson was the only

individual in the photos to be shirtless and to have a "handle-bar" moustache, and that, because

the witnesses' photo identifications of him were tainted, their subsequent in-court identifications

also should have been suppressed.  In addition, he claimed that the opportunity for both

witnesses to see their assailant was suspect, where as to Barrett, the assailant was far away, and

as to Blackburn, he was struggling with the assailant.

In considering this claim following the October 18, 2006 evidentiary remand hearing, the

trial court concluded as follows:

> In this instance, Messrs. Blackburn and Barrett did pick the
> Defendant out from the photos shown to them by the police, but their
> positive identifications reflect more than simply selecting a photo
> from a display.  Mr. Barrett had an independent basis for his
> identification, which was that he observed the Defendant in the area
> near the apartment complex.  The same can be said for Mr.
> Blackburn, who had a physical altercation with Mr. Stinson.  In
> August 18, 1989, the Defendant broke into Mr. Blackburn's
> apartment, the two struggled, and Mr. Blackburn maneuvered the
> intruder to the door and pushed him out of the apartment, but not
> before Mr. Stinson stabbed him.  (Notes of Testimony, 198-200).
>
> Because both men had seen the Defendant in close proximity,
> especially stabbing victim Edwin Blackburn, we believe that any
> possible suggestiveness of the photo array is insignificant.  Their

56

> identifications of the Defendant each had an independent basis, so
> any significance [of] the shirtless photo of the Defendant among the
> pictures of men wearing shirts is not relevant to this inquiry.  The
> witnesses saw Mr. Stinson and identified him as the person they saw.
> Attorney Dolan was not ineffective for not seeking suppression.

(Doc. No. 39 at 64.)

In analyzing this issue on appeal, the Pennsylvania Superior Court also noted trial counsel's testimony at the evidentiary hearing that, even if Stinson were bare-chested in the photo, it would not have been apparent because the pictures depicted the men from the shoulders up.  (Id. at 79 (citing N.T. 10/18/06 at 39) (Doc. No. 53-2 at 82).)  The Court also observed that the trial court found that both Barrett and Blackburn had an independent basis for identifying Stinson in the photo array where Barrett had observed Stinson near the apartment complex on the night in question, and Blackburn had wrestled with Stinson in his bedroom before pushing him out the door.  (Id. at 80.)  The Superior Court thus found Stinson's claim that his counsel was ineffective for failing to move for the suppression of this photo array to be without merit.  (See id.)

The federal standard for evaluating the reliability of identification evidence was articulated by the Supreme Court in Neil v. Biggers, 409 U.S. 188 (1972).  In Neil, the Court held that "convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Id. at 196-97 (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).  The Court observed that the central question in this analysis is "whether under the 'totality of the circumstances' the identification was reliable even though the

confrontation procedure was suggestive" and specified that the factors to be considered are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200.

In concluding that Stinson's ineffective assistance of counsel claim on this issue lacked merit, the trial court relied on Commonwealth v. Fowler, 352 A.2d 17 (Pa. 1976), for its holding that "[i]n reviewing a claim of the use of an unduly suggestive photo array, a court's responsibility is to determine whether, among the photos shown to the witnesses, there is a picture of a single individual that is in some way emphasized." (Doc. No. 39 at 64.)

In affirming the trial court's finding that Stinson's underlying claim that the photo array was suggestive lacked merit, thereby defeating his ineffective assistance claim, the Pennsylvania Superior Court cited to the standard established in Commonwealth v. Harris, 888 A.2d 862, 866 (Pa. Super. Ct. 2005), appeal denied, 931 A.2d 656 (Pa. 2007), that "[a] photographic identification is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification." (See Doc. No. 39 at 79 (quoting Harris, 888 A.2d at 866).)

The standard relied upon by the state court in determining that the photo array identification was appropriate is consistent with the federal standard set forth in Neil. Thus, the application of this standard by the trial court and the Superior Court to find that the photographs were not unduly suggestive, and further that both witnesses had an independent basis for their identifications of Stinson, is neither contrary to nor an unreasonable application of Supreme

Court precedent, nor were their decisions based on an unreasonable determination of the facts in the light of the evidence presented .  It therefore follows that the determination that Stinson's trial counsel was not ineffective for failing to move to suppress the photo array and in-court identifications of him is consistent with <u>Strickland</u>, and will not be disturbed here.

## V.     Conclusion

For the foregoing reasons, the petition for writ of habeas corpus (Doc. No. 1) will be denied.  The Court will also deny a certificate of appealability based on the reasoning in this memorandum.  However, Petitioner is advised that he has the right for thirty days to appeal the order denying his petition, and that the Court's denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks, and obtains, a certificate of appealability from the court of appeals.  <u>See</u> 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), 22.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES HOWARD STINSON,** | : | **CIVIL NO. 4:CV-07-1237** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **DAVID J. WAKEFIELD, et al.,** | : | |
| **Respondents** | : | |

### ORDER

**AND NOW**, on this 1st day of February, 2011, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1.    The petition for writ of habeas corpus (Doc. No. 1) is **DENIED**.

2.    A certificate of appealability is **DENIED**.

3.    The Clerk of Court is directed to **CLOSE** this case.


 *S/ Yvette Kane*
YVETTE KANE, Chief Judge
Middle District of Pennsylvania